# THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | Civil Action No. 1:12-CV-228 |
| *for the use of* | § | |
| J-CREW MANAGEMENT, INC. | § | |
| | § | |
| *Plaintiff* | § | |
| | § | |
| vs. | § | |
| | § | |
| ATLANTIC MARINE | § | |
| CONSTRUCTION COMPANY, INC., | § | |
| BRUCE W. EXUM, JR., LINDA | § | |
| EXUM, AND THE HANOVER | § | |
| INSURANCE COMPANY, | § | |
| | § | |
| *Defendants.* | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT
## & JURY DEMAND

The United States of America, for the use and benefit of Plaintiff, J-Crew Management, Inc. ("Plaintiff"), complains against defendants, Atlantic Marine Construction Company, Inc. ("Atlantic"), Bruce W. Exum, Jr., Linda Exum, and The Hanover Insurance Company ("Hanover"), and for its causes of action respectfully shows as follows:

## I. JURISDICTION

1. This court has jurisdiction over the subject matter of this dispute pursuant to 40 U.S.C. § 3133, more commonly known as the Miller Act, and 28 U.S.C. §1331 as an action arising under the laws of the United States. This Court also has

supplemental jurisdiction as to the underlying contract and additional state-law claims asserted by Plaintiff pursuant to 28 U.S.C. § 1367(a).

2.     This Court also has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000.00 and there is complete diversity between Plaintiff, a Texas corporation, and Defendant Atlantic (a Virginia corporation), Bruce W. Exum, Jr. and Linda Exum (residents of Virginia), and Defendant Hanover (a New Hampshire corporation).

## II.   VENUE

3.     Venue is proper in this Court pursuant to 40 U.S.C. § 3133 and 28 U.S.C. §1331, because the Subcontract that is the subject of this lawsuit was to be performed in this judicial district, and because 40 U.S.C. § 3133 requires that all suits on payment bonds for U.S. Government Projects be filed in the judicial district for where the contract was to be performed.

## III.   PARTIES

4.     Plaintiff, J-Crew Management, Inc., is a Texas corporation authorized to conduct business in this State and maintaining a principal place of business at 2123 Grizzly Trail, Harker Heights, Texas.

5.     Defendant Atlantic Marine Construction Company, Inc. is a Virginia corporation maintaining a principal place of business in, Virginia Beach, Virginia and may be served with process by delivering a summons with a true and correct copy of this

Complaint to Atlantic's Registered Agent, Linda Exum at 621 Heron Point Circle, Virginia Beach, Virginia 23452.

6. Defendant Bruce W. Exum, Jr., upon information and belief, is the President and Chief Executive Officer of Atlantic and a trustee of funds paid by the Owner for the benefit of Plaintiff. Bruce W. Exum, Jr. is a resident of Virginia Beach, Virginia and, upon information and belief, maintains a residence at 621 Heron Point Circle, Virginia Beach, Virginia 23452.

7. Defendant Linda M. Exum, upon information and belief, is the Vice President of Atlantic and a trustee of funds paid by the Owner for the benefit of Plaintiff. Linda Exum is a resident of Virginia Beach, Virginia and, upon information and belief, maintains a residence at 621 Heron Point Circle, Virginia Beach, Virginia 23452.

8. Defendant The Hanover Insurance Company is a New Hampshire Corporation authorized by the Texas Department of Insurance to conduct business in Texas and maintaining a principal place of business at 440 Lincoln Street, Worcester, Massachusetts. Hanover may be served with process by delivering a summons with a true and correct copy of this Complaint to Hanover's Registered Agent, CT Corporation System, 350 North St. Paul Street, Dallas, Texas.

## IV. BACKGROUND FACTS

9. This lawsuit arises from a construction project known as the Ft. Hood Child Development Center No. 1, located at Ft. Hood, in Killeen, Texas (the "Project"). The Project is owned by the United States Government, U.S. Army Corps of Engineers ("Owner" or "Army").

10.     Pursuant to an agreement entered into on or about April 16, 2009, the Owner contracted with Atlantic Marine Construction Co., Inc., a Virginia Corporation with its principal place of business in Virginia Beach, Virginia ("Atlantic"), for the performance of Contract No. W912DY-08-D-0029-0001 for the design and construction of the Project ("Prime Contract").

11.     The terms of the Prime Contract, and the Miller Act (40 U.S.C. § 3131, et. seq.), required Atlantic to provide a payment bond to ensure that all subcontractors that performed work on the Project were paid in full for their services. Atlantic complied with this requirement, by providing Bond No. 1882930 written by Hanover. *See* Bond No. 1882930, attached as Exhibit A.

12.     Atlantic entered into an agreement with Plaintiff, pursuant to a document titled Subcontract Agreement dated July 29, 2010 (the "Subcontract") attached as Exhibit B, to perform certain work required of Atlantic under the Prime Contract.

13.     Plaintiff, pursuant to the Subcontract, is entitled to recover for construction labor, equipment, materials and supplies provided to Atlantic in connection with the Project.

14.     On or about December 1, 2011, after giving Atlantic time to process Plaintiff's last payment request, Plaintiff made a claim on Hanover in the amount of $190,053.49 (*see*, Plaintiff's Bond Claim, attached as Exhibit C).

15.     To date, Atlantic has made two payments to Plaintiff's subcontractors - $8,000 to Pace Painting ($3,468.50 of which should not have been paid and remains in dispute) and $25,846.12 to Norman Woodworks – leaving a balance of $159,675.87.

16. Hanover has not responded to Plaintiff's payment bond claim other than to state that the claim was being investigated.

## V. CAUSES OF ACTION

### COUNT ONE
*(THE MILLER ACT - 40 U.S.C. § 3133)*

17. Plaintiff repeats and re-alleges the allegations set forth in Paragraphs 1 through 16 above as if such allegations were set forth at length herein.

18. Defendants, Atlantic and Hanover, have failed to pay Plaintiff for the labor and materials it supplied to the Project, leaving a balance due and owing of $159,675.87. This balance has been withheld from Plaintiff without any legal justification.

19. Plaintiff has made timely demand upon Atlantic and Hanover for payment of its Project claim.

20. Despite receiving proper notice under the Miller Act, neither Atlantic nor Hanover has attempted to settle Plaintiff's claim for the Project. Atlantic and Hanover have refused and continue to refuse to pay the delinquent amount.

21. Due to their failure to pay Plaintiff $159,675.87, which is justly due and owing to Plaintiff in accordance with the Bond and the Miller Act, Atlantic as principal, and Hanover as surety, are jointly and severally liable to Plaintiff who is a beneficiary of the Bond in the amount of $159,675.87.

22. More than 90 days, but less than one year, has expired since the last date on which Plaintiff performed any labor or furnished any materials to the Project.

23. The last date on which Plaintiff performed any work or furnished any materials on the Project was November 3, 2011.

24. Plaintiff has complied with all of the conditions required of it under both the Bond and the Miller Act.

25. **Wherefore,** Plaintiff demands judgment against Atlantic and Hanover, jointly and severally, for the sum of $159,675.87, with interest and costs of suit.

### COUNT TWO
*(FEDERAL PROMPT PAY ACT)*

26. Plaintiff repeats and re-alleges the allegations set forth in Paragraphs 1 through 25 above as if such allegations were set forth at length herein.

27. Atlantic, based upon information and belief, has made certified payment requests to the Government for the labor and materials provided to the Project by Plaintiff.

28. Defendant Atlantic, upon information and belief, has received payment from the Owner on those payment requests.

29. The Owner has not given written notice to Atlantic nor to Plaintiff of any deficiencies in the labor or materials provided on the Project by Plaintiff.

30. Defendant Atlantic has failed to pay Plaintiff within seven days after receiving payment from the Owner.

31. Pursuant to the Prompt Payment Act, 31 U.S.C. §§ 3901 et. seq., a late payment interest penalty at the Prompt Payment Interest Rate.

## COUNT THREE
### *(BREACH OF CONTRACT)*

32. Plaintiff repeats and re-alleges the allegations set forth in Paragraphs 1 through 31 above as if such allegations were set forth at length herein.

33. Atlantic entered into a contract with Plaintiff on or about July 29, 2010 to perform to perform certain work on the Project as set forth in more detail in the parties' Subcontract.

34. Plaintiff delivered labor and materials to the Project between July 20, 2010 and November 3, 2011 pursuant to the terms and conditions of the Subcontract.

35. Plaintiff fully performed all of its obligations under the Subcontract.

36. Plaintiff has made a demand upon Defendants Atlantic and Hanover for payment in the total amount of $159,675.87, however, to date, Atlantic and Hanover have refused to pay this amount.

37. Atlantic has breached its obligations under the Subcontract by failing to make payments to Plaintiff in accordance with the terms and conditions of the parties' agreement.

38. Plaintiff has incurred damages in the amount of $159,675.87, plus interest and additional costs and fees as a proximate cause of Atlantic's breach of its obligations to Plaintiff under the Subcontract.

## COUNT FOUR
### *(QUANTUM MERUIT)*

39. Plaintiff repeats and re-alleges the allegations set forth in Paragraphs 1 through 38 above as if same were set forth at length herein.

40. Plaintiff provided valuable services and furnished valuable materials to Atlantic for use on the Project between July 20, 2010 and November 3, 2011.

41. The reasonable value of the services and materials Plaintiff provided to Atlantic for use on the Project is $1,015.128.82 of which Plaintiff has been paid only $855,470.95 to date, leaving an unpaid balance of $159,675.87.

42. Atlantic, at the time Plaintiff performed the services and delivered the materials at issue to the Project was aware and/or had reasonable notice that Plaintiff was expecting to be paid for the labor and materials delivered to the project.

43. Atlantic accepted, used and enjoyed the labor and materials Plaintiff provided on the Project.

44. Atlantic would be unjustly enriched in the minimum amount of $159,675.87 if it were allowed to retain the benefit of the labor and materials Plaintiff provided on the project without fully compensating Plaintiff.

45. Atlantic's failure to pay Plaintiff the reasonable value of the labor and materials it delivered to the Project has cause, and will continue to cause Plaintiff to incur actual damages.

### COUNT FIVE
#### (UNJUST ENRICHMENT)

46. Plaintiff repeats and re-alleges the allegations set forth in Paragraphs 1 through 45 above as if such allegations were set forth at length herein.

47. Atlantic has accepted, used and enjoyed the benefit of labor and materials Plaintiff provided to the Project between July 20, 2010 and November 3, 2011.

48. The reasonable value of the services and materials Plaintiff provided to Atlantic for use on the Project is $1,015.128.82, however Atlantic has paid Plaintiff only $855,470.95 to date.

49. Atlantic has been unjustly enriched in an amount not less than $159,675.87 by retaining the benefit of labor and materials Plaintiff provided to the Project.

## COUNT SIX
### *(TEXAS CONSTRUCTION TRUST FUND STATUTE & ACCOUNTING)*

50. Plaintiff repeats and re-alleges the allegations set forth in Paragraphs 1 through 49 above as if such allegations were set forth at length herein.

51. Plaintiff, in addition to other recoveries it may have, seeks recovery against Atlantic, Defendant Bruce W. Exum, Jr. and Defendant Linda Exum under Chapter 162 of the Texas Property Code ("the Trust Fund Act").

52. The Prime Contract and the Subcontract were for the improvement of real property in the State of Texas.

53. The Owner has paid Atlantic in full for the work performed by Plaintiff.

54. The fund paid by the Owner to Atlantic for work performed and materials delivered by Plaintiff on the Project are deemed "trust funds" pursuant to Texas Property Code § 162.001, *et seq*.

55. The Trust Fund Act provides "[a] contractor, subcontractor, or owner or an officer, director, or agent of a contractor . . . who receives trust funds or who has control or direction of trust funds, is a trustee of the trust funds." Tex. Prop. Code. § 162.002.

56. Defendant Bruce W. Exum, Jr. is, and at all times material to Plaintiff's claims was, the President and Chief Executive Officer of Atlantic and has had control or direction of trust funds.

57. Defendant Linda Exum, upon information and belief, is and at all times material to Plaintiff's claims was, the Vice President and an owner of Atlantic. *See* Tex. Prop. Code § 162.002.

58. Defendants Bruce W. Exum, Jr. and Linda Exum, in addition to Atlantic, are liable to Plaintiff in their individual capacity.

59. Plaintiff is a beneficiary of trust funds paid by the Owner to Atlantic. Tex. Prop. Code § 162.003.

60. Atlantic, Bruce W. Exum, Jr. and Linda Exum breached their fiduciary duties as trustees to Plaintiff by intentionally, knowingly, and with the intent to defraud retaining, using, disbursing, or otherwise diverting trust funds without fully paying Plaintiff.

61. **Wherefore**, Plaintiff seeks an accounting, together with the recovery of the actual, exemplary, and statutory damages as allowed by the Trust Fund Act, common law and the Subcontractor Agreement for such violations.

## COUNT SEVEN
### *(TEXAS PROMPT PAY ACT)*

62. Plaintiff repeats and re-alleges the allegations set forth in Paragraphs 1 through 61 above as if such allegations were set forth at length herein.

63. Atlantic, pursuant to Texas Government Code § 2251.022, was required to pay Plaintiff not later than the 10th day after the date it received payment from the Owner.

64. Atlantic has received payment in full for the labor and materials provided to the Project by Plaintiff.

65. Atlantic has refused to make payment to Plaintiff for the labor and materials provided to the Project by Plaintiff.

66. As a result of the foregoing, Atlantic violated the provisions of §2251.001, *et seq.*, Texas Government Code, and therefore Plaintiff is entitled to recover interest on the unpaid amount as provided in §2251.025 of the Texas Government Code.

67. **Wherefore**, Plaintiff seeks an accounting, together with the recovery of the actual, exemplary, and statutory damages as allowed by the Trust Fund Act, common law and the Subcontractor Agreement for such violations.

## VI. PRAYER FOR RELIEF

**WHEREFORE**, the United States of America, for the use of J-Crew Management, Inc. demands judgment against defendants, jointly and severally, in the amount of $159,675.87 together with interest, costs, attorneys' fees, exemplary and statutory damages in the maximum amount allowed by law, and such further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial for all triable issues of fact.

ALLENSWORTH & PORTER, LLP

/s/ *Chad B. Simon*

Joe R. Basham - State Bar No. 24036197
Chad B. Simon - State Bar No. 24078052
100 Congress Ave., Suite 700
Austin, Texas 78701
Telephone: (512) 708-1250
Facsimile: (512) 708-0519
*Attorneys for Plaintiff*

# EXHIBIT A

| PAYMENT BOND<br>*(See instructions on reverse)* | DATE BOND EXECUTED *(Must be same or later than date of contract)*<br>APRIL 22, 2009 | OMB No.:9000-0045 |
|---|---|---|

Public reporting burden for this collection of information is estimate to average 25 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the FAR Secretariat (MVR), Federal Acquisition Policy Division, GSA, Washington, DC 20405

| PRINCIPAL *(Legal name and business address)* | TYPE OF ORGANIZATION *("X" one)* | | |
|---|---|---|---|
| ATLANTIC MARINE CONSTRUCTION CO., INC.<br>3465 CHANDLER CREEK ROAD<br>VIRGINIA BEACH, VA 23453 | ☐ INDIVIDUAL | | ☐ PARTNERSHIP |
| | ☐ JOINT VENTURE | | ☒ CORPORATION |

STATE OF INCORPORATION
VIRGINIA

| SURETY(IES) *(Name(s) and business address(es)* | PENAL SUM OF BOND | | | |
|---|---|---|---|---|
| THE HANOVER INSURANCE COMPANY<br>440 Lincoln Street, Worcester, MA 01653 | MILLION(S) | THOUSAND(S) | HUNDRED(S) | CENTS |
| | 007 | 396 | 496 | 00 |
| | CONTRACT DATE<br>APRIL 16,<br>2009 | CONTRACT NO<br>W912DY-08-D-0029<br>Delivery Order/Call No.<br>0001 | | |

## OBLIGATION:

We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally. However, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us. For all other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit of liability is indicated, the limit of liability is the full amount of the penal sum.

## CONDITIONS:

The above obligation is void if the Principal promptly makes payment to all persons having a direct relationship with the Principal or a subcontractor of the Principal for furnishing labor, material or both in the prosecution of the work provided for in the contract identified above, and any authorized modifications of the contract that subsequently are made. Notice of those modifications to the Surety(ies) are waived.

## WITNESS:

The Principal and Surety(ies) executed this payment bond and affixed their seals on the above date.

| ATLANTIC MARINE CONSTRUCTION CO., INC. | | PRINCIPAL | | |
|---|---|---|---|---|
| SIGNATURE(S) | 1.<br>BY _____ (Seal) | 2.<br>(Seal) | 3.<br>(Seal) | Corporate Seal |
| NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | 3. | |

| INDIVIDUAL SURETY(IES) | | | |
|---|---|---|---|
| SIGNATURE(S) | 1.<br>(Seal) | 2.<br>(Seal) | |
| NAME(S) *(Typed)* | 1. | 2. | |

| CORPORATE SURETY(IES) | | | | | |
|---|---|---|---|---|---|
| SURETY A | NAME & ADDRESS | THE HANOVER INSURANCE COMPANY<br>440 Lincoln Street, Worcester, MA 01653 | STATE OF INC.<br>NEW HAMPSHIRE | LIABILITY LIMIT<br>$92,994,000.00 | |
| | SIGNATURE(S) | 1.<br>BY: _____ | | 2. | Corporate Seal |
| | NAME(S) & TITLE(S) *(Typed)* | 1. MARNI G. CANNATA,<br>ATTORNEY-IN-FACT | | 2. | |

AUTHORIZED FOR LOCAL REPRODUCTION
Previous edition is usable

STANDARD FORM 25A (REV 10-98)
Prescribed by GSA-FAR (48 CFR) 53.2228(c)



| PERFORMANCE BOND<br>*(See instructions on reverse)* | DATE BOND EXECUTED *(Must be same or later than date of contract)*<br><br>APRIL 22, 2009 | OMB No.: 9000-0045 |
|---|---|---|

Public reporting burden for this collection of information is estimated to average 25 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the FAR Secretariat (MVR), Federal Acquisition Policy Division, GSA, Washington, DC 20405.

| PRINCIPAL *(Legal name and business address)* | TYPE OF ORGANIZATION *("X" one)* | | | |
|---|---|---|---|---|
| ATLANTIC MARINE CONSTRUCTION CO., INC.<br>3465 CHANDLER CREEK ROAD<br>VIRGINIA BEACH, VA 23453 | ☐ INDIVIDUAL | ☐ PARTNERSHIP | | |
| | ☐ JOINT VENTURE | ☒ CORPORATION | | |
| | STATE OF INCORPORATION<br>VIRGINIA | | | |

| SURETY(IES) *(Name(s) and business address(es))* | PENAL SUM OF BOND | | | |
|---|---|---|---|---|
| THE HANOVER INSURANCE COMPANY<br>440 Lincoln Street, Worcester, MA 01653 | MILLION(S) | THOUSAND(S) | HUNDRED(S) | CENTS |
| | 007 | 396 | 496 | 00 |
| | CONTRACT DATE<br><br>APRIL 16, 2009 | CONTRACT NO.<br>W912DY-08-D-0029<br>Delivery Order/Call No.<br>0001 | | |

OBLIGATION:

We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally. However, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us. For all other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit of liability is indicated, the limit of liability is the full amount of the penal sum.

CONDITIONS:

The Principal has entered into the contract identified above.

THEREFORE:

The above obligation is void if the Principal -

   (a)(1) Performs and fulfills all the undertakings, covenants, terms, conditions, and agreements of the contract during the original term of the contract and any extensions thereof that are granted by the Government, with or without notice to the Surety(ies), and during the life of any guaranty required under the contract, and (2) performs and fulfills all the undertakings, covenants, terms conditions, and agreements of any and all duly authorized modifications of the contract that hereafter are made. Notice of those modifications to the Surety(ies) are waived.

   (b) Pays to the Government the full amount of the taxes imposed by the Government, if the said contract is subject to the Miller Act, (40 U.S.C. 270a-270e), which are collected, deducted, or withheld from wages paid by the Principal in carrying out the construction contract with respect to which this bond is furnished.

WITNESS:

The Principal and Surety(ies) executed this performance bond and affixed their seals on the above date.

| ATLANTIC MARINE CONSTRUCTION CO., INC. | | PRINCIPAL | | |
|---|---|---|---|---|
| SIGNATURE(S) | 1.<br>BY: _(Seal)_ | 2.<br>_(Seal)_ | 3.<br>_(Seal)_ | Corporate Seal |
| NAME(S) &<br>TITLE(S)<br>*(Typed)* | 1. | 2. | 3. | |

| INDIVIDUAL SURETY(IES) | | | |
|---|---|---|---|
| SIGNATURE(S) | 1.<br>_(Seal)_ | 2.<br>_(Seal)_ | |
| NAME(S)<br>*(Typed)* | 1. | 2. | |

| | CORPORATE SURETY(IES) | | | |
|---|---|---|---|---|
| SURETY A | NAME &<br>ADDRESS | THE HANOVER INSURANCE COMPANY<br>440 Lincoln Street, Worcester, MA 01653 | STATE OF INC.<br>NEW HAMPSHIRE | LIABILITY LIMIT<br>$ 92,994,000.00 | |
| | SIGNATURE(S) | 1.<br>BY: | 2. | | Corporate Seal |
| | NAME(S) &<br>TITLE(S)<br>*(Typed)* | 1. MARNI G. CANNATA,<br>ATTORNEY-IN-FACT | 2. | | |

| AUTHORIZED FOR LOCAL REPRODUCTION<br>Previous edition not usable | STANDARD FORM 25 *(REV. 5 96)*<br>Prescribed by GSA-FAR (48 CFR) 53.228(b) |
|---|---|

This Power of Attorney may not be used to execute any bond with an inception date after November 1, 2009

## THE HANOVER INSURANCE COMPANY
## MASSACHUSETTS BAY INSURANCE COMPANY
## CITIZENS INSURANCE COMPANY OF AMERICA

*POWERS OF ATTORNEY*
*CERTIFIED COPY*

KNOW ALL MEN BY THESE PRESENTS: That THE HANOVER INSURANCE COMPANY and MASSACHUSETTS BAY INSURANCE COMPANY, both being corporations organized and existing under the laws of the State of New Hampshire, and CITIZENS INSURANCE COMPANY OF AMERICA, a corporation organized and existing under the laws of the State of Michigan, do hereby constitute and appoint
**Robert C. Buskalew, Marni G. Cannata, Michael Lewis, Joe E. Claunch, Jr., Brenda G. Launder and/or Nancy E. Drake**

of Virginia Beach, VA and each is a true and lawful Attorney(s)-in-fact to sign, execute, seal, acknowledge and deliver for, and on its behalf, and as its act and deed any place within the United States, or, if the following line be filled in, only within the area therein designated

any and all bonds, recognizances, undertakings, contracts of indemnity or other writings obligatory in the nature thereof, as follows:
**Any such obligations in the United States, not to exceed Twenty Million and No/100 ($20,000,000) in any single instance**

and said companies hereby ratify and confirm all and whatsoever said Attorney(s)-in-fact may lawfully do in the premises by virtue of these presents. These appointments are made under and by authority of the following Resolution passed by the Board of Directors of said Companies which resolutions are still in effect:

"RESOLVED, That the President or any Vice President, in conjunction with any Assistant Vice President, be and they are hereby authorized and empowered to appoint Attorneys-in-fact of the Company, in its name and as its acts, to execute and acknowledge for and on its behalf as Surety any and all bonds, recognizances, contracts of indemnity, waivers of citation and all other writings obligatory in the nature thereof, with power to attach thereto the seal of the Company. Any such writings so executed by such Attorneys-in-fact shall be as binding upon the Company as if they had been duly executed and acknowledged by the regularly elected officers of the Company in their own proper persons." (Adopted October 7, 1981 - The Hanover Insurance Company; Adopted April 14, 1982 – Massachusetts Bay Insurance Company; Adopted September 7, 2001 Citizens Insurance Company of America)

IN WITNESS WHEREOF, THE HANOVER INSURANCE COMPANY, MASSACHUSETTS BAY INSURANCE COMPANY and CITIZENS INSURANCE COMPANY OF AMERICA have caused these presents to be sealed with their respective corporate seals, duly attested by a Vice President and an Assistant Vice President, this 23rd day of May, 2008.



THE HANOVER INSURANCE COMPANY
MASSACHUSETTS BAY INSURANCE COMPANY
CITIZENS INSURANCE COMPANY OF AMERICA

Mary Jeanne Anderson, Vice President

Robert K. Grennan Assistant Vice President

THE COMMONWEALTH OF MASSACHUSETTS )
COUNTY OF WORCESTER ) ss

On this 23rd day of May 2008, before me came the above named Vice President and Assistant Vice President of The Hanover Insurance Company, Massachusetts Bay Insurance Company and Citizens Insurance Company of America, to me personally known to be the individuals and officers described herein, and acknowledged that the seals affixed to the preceding instrument are the corporate seals of The Hanover Insurance Company Massachusetts Bay Insurance Company and Citizens Insurance Company of America, respectively, and that the said corporate seals and their signatures as officers were duly affixed and subscribed to said instrument by the authority and direction of said Corporations.

Barbara A. Garlick
Notary Public

My commission expires on November 3, 2011

I, the undersigned Assistant Vice President of The Hanover Insurance Company, Massachusetts Bay Insurance Company and Citizens Insurance Company of America, hereby certify that the above and foregoing is a full, true and correct copy of the Original Power of Attorney issued by said Companies, and do hereby further certify that the said Powers of Attorney are still in force and effect.

This Certificate may be signed by facsimile under and by authority of the following resolution of the Board of Directors of The Hanover Insurance Company, Massachusetts Bay Insurance Company and Citizens Insurance Company of America.

"RESOLVED, That any and all Powers of Attorney and Certified Copies of such Powers of Attorney and certification in respect thereto, granted and executed by the President or any Vice President in conjunction with any Assistant Vice President of the Company, shall be binding on the Company to the same extent as if all signatures therein were manually affixed, even though one or more of any such signatures thereon may be facsimile." (Adopted October 7, 1981 - The Hanover Insurance Company; Adopted April 14, 1982 Massachusetts Bay Insurance Company Adopted September 7, 2001 - Citizens Insurance Company of America)

GIVEN under my hand and the seals of said Companies, at Worcester, Massachusetts, this 22ND day of APRIL , 2009.

THE HANOVER INSURANCE COMPANY
MASSACHUSETTS BAY INSURANCE COMPANY
CITIZENS INSURANCE COMPANY OF AMERICA

Stephen L. Brault, Assistant Vice President

# EXHIBIT B



Atlantic Marine Construction Company, Inc.
3465 Chandler Creek Rd.
Virginia Beach, Va. 23454
Phone 757-362-0023
Fx 757-362-0024
@amcoinc.

# SUBCONTRACT AGREEMENT

Subcontract No.   JCR140001
Fort Hood CDC, FT Hood TX

THIS SUBCONTRACT AGREEMENT made as of this _ day of July, 2010 by and between Atlantic Marine Construction Co., Inc., hereafter referred to as ("AMC"), and **JCRew Management, Inc.** hereafter referred to as ("Subcontractor "). Whereas AMC has, heretofore, entered into a contract with the Owner, hereinafter referred to as ("the Owner") for the construction of Contract W912DY-08-D-0029 0001.

WHEREAS, AMC has entered into the above noted prime contract ("the Prime Contract") with the above noted owner ("the Owner") for the project that is described above ("the Project").

WHEREAS, the Subcontractor desires to furnish and/or provide a portion of the work and/or materials required by the Prime Contract ("the Subcontract Work") as set forth in this Subcontract Agreement ("the Subcontract"); and

WHEREAS, AMC desires to obtain work and/or materials from the Subcontractor under the terms and conditions of the Subcontract;

NOW, THEREFORE, the parties hereto for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, do hereby agree and covenant as follows:

1.   PRIME CONTRACT: The Prime Contract together with all documents described therein and appurtenant thereto, are incorporated herein by reference and made a part of this Subcontract, and are available to the Subcontractor at the office of AMC. The Subcontractor assumes the same obligations to AMC under this Subcontract that AMC assumes to the Owner under the Prime Contract. The Subcontractor shall comply with all conditions of the Prime Contract and the documents made a part thereof insofar as they apply to the Subcontract Work described in Paragraph 3 of this Subcontract. The Subcontractor also acknowledges that it has made a site visit to review conditions which may relate to the performance of the Subcontract Work, and that it has reviewed the Prime Contract, the Drawings and Specifications as they relate to its work and all other work which may interface with the Subcontract Work. If the Owner of the Project is a governmental entity, applicable laws, ordinances, and regulations may also govern this Subcontract, including without limitation to the Federal Acquisition Regulations and the Department of Defense Supplement to the Federal Acquisition Regulations. Because changes to such laws, ordinances and regulations may be issued at any time and particular agencies may issue supplemental regulations, current provisions and the individual project specifications must be consulted.

2.   SUBCONTRACT DOCUMENTS: The Subcontract documents consist of this Subcontract Agreement, the Prime Contract, the Drawings, the Specifications, and all Addenda issued prior to and all Modifications issued after execution of the Subcontract to any of these documents. In the event of a discrepancy among any of the Subcontract Documents, the following shall be the order of precedence, with the document taking precedent listed first:
   i.     The Subcontract Agreement
   ii.    The Specifications
   iii.   The Drawings
   iv.    The Prime Contract together with Addenda and Modifications
However, should the Prime Contract contain an Order of Precedence Clause, such clause shall govern, except that the terms of this Subcontract Agreement shall govern over all other documents.

3.	SCOPE OF SUBCONTRACT WORK:  The Subcontractor shall, for and in the stead of AMC, perform all work as follows:

This Scope of Work (SOW) describes the performance requirements to supply and install all necessary components as required by design and as defined below.  The project consists of the following activities (summarized by specification section) in brief but is not limited to the following activities:

042113 - UNIT MASONRY
061053 MISCELLANEOUS ROUGH CARPENTRY
064023 INTERIOR ARCHITECTURAL WOODWORK
072100 THERMAL INSULATION
072413 POLYMER-BASED EXTERIOR INSULATION & FINISH SYSTEM (EIFS)
072713 MODIFIED BITUMINOUS SHEET AIR BARRIERS
072726 FLUID APPLIED MEMBRANE AIR BARRIER
076200 SHEET METAL FLASHING AND TRIM
078413 PENETRATION FIRE STOPPING
078446 FIRE RESISTIVE JOINT SYSTEMS
079200 JOINT SEALANTS
081113 HOLLOW METAL DOORS AND FRAMES
081416 FLUSH WOOD DOORS
083323 OVERHEAD COILING DOORS
087100 DOOR HARDWARE
092216 NON-STRUCTURAL METAL FRAMING
092900 GYPSUM BOARD
093000 TILING
095113 ACOUSTICAL PANEL CEILINGS
096513 RESILIENT BASE AND ACCESSORIES
096516 RESILIENT SHEET FLOORING
096519 RESILIENT TILE FLOORING
096566 RESILIENT ATHLETIC FLOORING
096813 TILE CARPETING
097723 FABRIC-WRAPPED PANELS
099113 EXTERIOR PAINTING
099123 INTERIOR PAINTING
099600 HIGH PERFORMANCE COATINGS
102113 TOILET COMPARTMENTS
102213 WIRE MESH PARTITIONS
102600 WALL AND DOOR PROTECTION
102800 TOILET, BATH, AND LAUNDRY ACCESSORIES
105113 METAL LOCKERS
116653 GYMNASIUM DIVIDERS
122113 HORIZONTAL LOUVER BLINDS
124813 ENTRANCE FLOOR MATS AND FRAMES

The above summaries are not intended to be an all inclusive or exhaustive list. The subcontractor will be expected to provide and install components for this facility as required by the provided drawings and design specifications.

4.	SUBCONTRACT AMOUNT & PAYMENT:

a)	For the performance of the work described in Paragraph 3 of this Subcontract Agreement, AMC shall pay the Subcontractor the sum of Nine Hundred Ninety Six Thousand Five Hundred Ninety Two Dollars and 12 cents. ($996592.12) subject to additions and deductions as herein provided. The contract sum includes all Federal, State, County, Municipal and other Taxes imposed by law. Where the law requires any such tax to be stated and charged separately, the total of all taxes is included in the Contract Sum indicated above.

b)	Progress payments subject to all applicable provisions of the Prime Contract shall be made within Ten (10) days after receipt by AMC of payment from the Owner, less any deductions for improperly or untimely performed work or for work performed by AMC on the Subcontractor's account; provided, however, that if the Owner is a

governmental entity and progress payments are required to be made earlier by law, then progress payments will be made to the Subcontractor upon receipt by AMC within the time limits prescribed by law if earlier than Ten (10) days.

c) The Subcontractor may be required as a condition precedent to any payment to furnish evidence satisfactory to AMC that all payrolls, material bills, and other indebtedness applicable to the Subcontractor's Work have been paid. In the event AMC has reason to believe that labor, material or other obligations incurred in the performance of the Subcontractor's Work are not being paid, AMC may take any steps deemed necessary to assure that any progress payment shall be utilized to pay such obligations. AMC shall also have the right to offset any amounts due to Subcontractor under any other agreement with AMC to pay such obligations.

d) Retainage: There shall be withheld from payments to the subcontractor a retainage percentage equal to that held by the Owner from AMC's payments.

e) Progress payments shall constitute a waiver of all claims by the Subcontractor relating to the Subcontractor's work which is the subject of each progress payment, but shall in no way relieve the Subcontractor of liability for the obligation to warrant or guarantee Subcontractor's Work, or for faulty or defective work, or for incomplete or unperformed work.

f) The Subcontractor understands, acknowledges and agrees that progress payments to it shall not become due, unless and until, and as a resolute prerequisite, AMC has actually received payment from the Owner for the Subcontractor's work.

5. **FINAL PAYMENT:**

a) Upon acceptance of the Subcontractor's Work by the Owner and AMC, and upon the Subcontractor furnishing evidence of fulfillment of the Subcontractor's obligations as agreed herein, AMC shall forward the Subcontractor's application for final payment.

b) Before AMC shall be required to forward the Subcontractor's application for final payment to the Owner, the Subcontractor shall submit to AMC:

    i. An affidavit that all payrolls, bills for materials and equipment, and other indebtedness connected with the Subcontractor's Work for which the Owner or AMC or AMC's surety might in any way be liable, have been paid or otherwise satisfied

    ii. Consent of surety to final payment, if required

    iii. Satisfaction of required close-out procedures; and,

    iv. Other substantiation and certification as required by AMC, including but not limited to receipts, releases, and waivers of claims to the extent and in such form as may be designated by AMC or the Owner

c) Final Payment shall constitute a waiver of all claims by the Subcontractor relating to the Subcontractor's Work, but shall in no way relieve the Subcontractor of liability for the obligation to warrant or guarantee Subcontractor's Work, or for any faulty or defective work appearing after Final Payment.

d) The Subcontractor understands, acknowledges and agrees that final payment to it shall not become due unless and until, and as a resolute prerequisite, AMC has actually received final payment from the Owner for the Subcontractor's work.

6. **PROJECT SCHEDULE:**

**Time Is Of The Essence On This Subcontract:** The subcontractor agrees to promptly begin work as soon as notified by AMC and shall employ a work force sufficient to complete the work to by performed under this Agreement no later than the date 7/15/2010 herein referred to as the "Performance Period"), subject to adjustments authorized by AMC. The progress of the Work will be periodically evaluated to determine conformance with AMC's schedule, as amended, to reflect the actual progress of the project. If evaluation reveals the Work to be behind schedule, the Subcontractor shall arrange by whatever means necessary to make-up the lost time as directed by AMC, including overtime to be performed at the Subcontractor's expense.

a)  If the Subcontractor wishes to make a claim for increase in the Subcontract Performance Period, it shall give AMC written notice thereof within THREE (3) CALANDER DAYS after the occurrence of the event giving rise to such claim, or within the time period required by the Prime Contract, whichever is shorter. This notice shall be given by the Subcontractor before proceeding to execute the work, except in an emergency endangering life or property. No claim for an increase in the Performance Period shall be valid unless so made, and any changes in the Performance Period resulting from such claim shall not be valid unless authorized by a written Change Order.

7.  If the process of the Subcontract Work is substantially delayed without fault or responsibility of the Subcontractor, then the time for the Subcontract Work shall be extended to the extent obtained by AMC under the Prime Contract and the Progress Schedule shall be revised accordingly. AMC shall not be liable to the Subcontractor for any damages or additional compensation as a consequence of delays unless AMC has first recovered the same on behalf of the Subcontractor from the Owner. It is understood and agreed by the Subcontractor that, apart from such recovery from the Owner, the Subcontractor's sole and exclusive remedy for delay shall be an extension in the time for performance of the Subcontract Work.

8.  SUBCONTRACT EXECTION: The original of the Subcontract Agreement must be signed and returned to AMC within fifteen (15) days of the date appearing above. AMC reserves the right to unilaterally withdraw this Agreement if it has not been completely executed and returned within fifteen (15) days of the date appearing above. However, if this Agreement is not withdrawn by AMC, and if the Subcontractor does not return an executed copy of this Agreement or written exception to the terms contained herein within thirty (30) days from the date appearing above, then this Agreement will become the contract between AMC and the Subcontractor. In such event, AMC will require full performance there of

9.  SUBMITTALS: All required submittals (shop drawings, product data, samples, & etc.) shall be forwarded to AMC for review no later than 7/27/2010 in order to not delay the Work of the activities of AMC or other subcontractors. Should the subcontractor present submittals that do not conform to the contract documents; the subcontractor will be charged all costs associated with the re-review and re-transmittal of the submittals. All submittals must contain any and all applicable MSDS forms. A total of six (6) submittal package copies shall be furnished to AMC

10. PERMITS AND LICENSES: The Subcontractor shall inform itself in detail of all licensing and tax requirements pertaining to the Prime Contract, and shall comply with and enforce those applicable to the work hereunder. Unless otherwise stated in the Subcontract Documents the Subcontractor shall secure and pay for all permits and governmental fees, taxes, licenses and inspections necessary for the proper execution and completion of the work, and/or which are legally required.

11. CHANGES IN THE WORK:

a)  The subcontractor may be ordered in writing by AMC's Project manager or a AMC corporate officer, without invalidating the Subcontract, to make changes in the Work within the general scope of this Subcontract consisting of additions, deletions or other revisions, including, but not limited to those required by Modifications to the Prime Contract issued subsequent to this Agreement. AMC reserves the right to direct changes, additions and/or deletions in the Work, as it may deem necessary. The value of the work to be changed, added or deleted shall be stated in the written order and shall be added to or deducted from the Contract Sum and adjustments made to the Performance Period. No change from the Work specified in this Agreement will be permitted, or paid for, unless the additional or deductive costs of the change is first agreed upon and a written change order is executed by the Subcontractor and AMC's Authorized Representative.

b) Should AMC and the Subcontractor be unable to agree as to the value of the work to be changed, added, or deleted, the Subcontractor shall promptly proceed with the work under the unilateral written order of AMC. The determination of the value of the changed work shall be determined pursuant to Paragraph eleven (11) herein

## 12. CLAIMS AND DISPUTES

a) With respect to any dispute between the Subcontractor and AMC for which the Owner is or may be liable, the Subcontractor will prepare its claim and will timely present to AMC for submission to the Owner under the applicable disputes resolution provision of the Prime Contract. AMC will cooperate with the Subcontractor in presenting such claim to the Owner and will pay to the Subcontractor (subject to any applicable setoff) any amounts recovered for the Subcontractor on such claim. AMC shall not have any obligation to submit a claim by the Subcontractor that AMC does not in good faith believe meets all applicable requirements pertaining to submission of claims to the Owner. The Subcontractor agrees that it will bear all costs, including legal fees, necessary to pursue such a claim against the Owner, and that this remedy shall be the Subcontractor's sole and exclusive remedy in lieu of any claim directly against AMC or its bonding company pursuant to the any other law or procedure, regardless of the outcome of the claim

b) The Subcontractor agrees that all other disputes not included in subparagraph (A) above, shall be litigated in the Circuit Court for the City of Norfolk, Virginia, or the United States District Court for the Eastern District of Virginia, Norfolk Division. The Parties hereto expressly consent to the jurisdiction and venue of said courts.

## 11 CLAIMS AND DISPUTES (cont)

c) At sole discretion of AMC, claims included in subparagraphs (a) or (b), above, may be arbitrated of decided by some other means of alternative dispute resolution procedure. If AMC determines that resolution of any dispute between the Subcontractor and AMC shall be made in such manner, litigation pursuant to subparagraph (b), above, shall not be permitted. AMC will be entitled to recover all costs incurred in any litigation or arbitration between parties, including but not limited to, its attorney fees.

d) No litigation, arbitration or other dispute resolution procedure concerning a dispute arising under or relating to the Subcontractor may be commenced by the Subcontractor more than ONE (1) YEAR after completion of the Subcontract Work by the Subcontractor. In any event, the Subcontractor shall proceed diligently with the Subcontract Work pending resolution of any dispute

13. WARRANTY: The Subcontractor warrants that all workmanship, materials, and equipment furnished under this Subcontract will be of good quality, free from faults and defects, and in conformance with the Subcontract for the term required in the Prime Contract. If no such provisions exist, then the Subcontractor shall warrant its work aforesaid for a period of one (1) year from the final acceptance of the completed Prime Contract work by the Owner. The Subcontractor further warrants that any design or engineering work performed by it is competent and in keeping with the accepted industry and trade standards for such design or engineering work and the Subcontractor further agrees to hold AMC harmless from any loss, claims, demands, suits, actions or expenses resulting from the Subcontractor's breach or from a claimed breached of said warranty.

14. DELAY DAMAGES: It is crucial that this project finishes within the Performance Period and contract time allotted. Should subcontractor delay the project to the extent that the critical path is affected and the project completion extends beyond the allowable completion date due to the actions or in-actions of the subcontractor, AMC shall have the right to apportion and assess any delay damages suffered by AMC, including but not limited to, any damages imposed on AMC by the Owner, liquidated or otherwise, on a proportion basis, depending on how much the subcontractor's actions or in-actions delayed the project. The subcontractor shall only be responsible for the impacts caused directly by the subcontractor's actions or in-actions.

15. SAFETY: The Subcontractor shall take all reasonable safety precautions with respect to the performance of its work and shall comply with all safety regulations initiated by AMC and with all applicable laws, ordinances, rules, regulations and lawful orders of any public authority for the safety of persons or property. Further, the Subcontractor shall comply with the safety and health standards of the Occupational Safety and Health Act of 1970, the safety and

health standards of the Army Corps of Engineers Safety and Health Requirements Manual No. EM 385-1-1 and all additions and modifications thereafter. The Subcontractor shall hold AMC harmless for any violation by the Subcontractor's workers, employees or agents of any law or regulation, and shall reimburse AMC for any fines, damages, or expenses of any kind incurred by reason of the Subcontractor's failure to comply with such law or regulation.

16. **INDEMNIFICATION:**

a)  To the fullest extent permitted by law, the Subcontractor shall defend, indemnify and hold harmless the Owner, AMC, the Architect, and project consultants from and against all claims, damages, losses and expenses, including but not limited to attorney's fees, arising out of or resulting from performance of the Work under this Subcontract, but only to the extent caused in whole or in part by negligent acts or omissions of the Subcontractor, the Subcontractor's Sub-contractor(s), anyone directly or indirectly employed by them or anyone for whose acts may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder. Such obligation shall not be construed to negate, abridge, or otherwise reduce other rights or obligations of indemnity which would otherwise exist as to a party or person described in this paragraph.

b)  The indemnification obligation under this provision shall not be limited by a limitation on amount or type of damage, compensation or benefits payable by or for the Subcontractor or the Subcontractor's Sub-contractors under workers' or workmen's compensation acts, disability benefit acts or other employee benefits acts

17. **INSURANCE:** The Subcontractor agrees to obtain, pay for, and maintain at least the following insurance coverage: Commercial General Liability, Workmen's Compensation and Employers' Liability, and Automobile Liability Insurance. The specific coverage and minimum amounts shall be as required of AMC by the Prime Contract or as otherwise specified herein. Prior to commencing work on-site, the Subcontractor shall deliver *Certificate of Insurance* to AMC providing for the minimum coverage required by the Contract Documents and a Thirty (30) day advance written notice to AMC prior to cancellation or alteration of any policy. Additionally all Certificates of Insurance must list AMC as an additional insured. A completed CG2010 must be supplied as evidence of endorsement.



18. **BONDS:** At the option of AMC, when the Subcontract is $25,000, or greater, the Subcontractor agrees that it shall provide AMC a Performance Bond equal to 100% of the Subcontract Sum and a Labor and Material Payment bond equal to 50% of the Subcontract Sum, in favor of AMC, on standard industry accepted bond forms as security for faithful performance of the work and payment of all labor and material used in the prosecution of the Subcontractor's work. The surety on such bonds shall be duly authorized to do business in the Commonwealth of Virginia and shall be subject to approval by AMC.



19. **SUBCONTRACTOR'S REMEDIES:** If AMC does not pay the Subcontractor through no fault of the Subcontractor, within seven (7) days from the time payment should be made as provided in paragraph Four (4), the Subcontractor may, without prejudice to any other remedy he may have, upon seven (7) additional days written notice to AMC, stop work until payment of the amount owed has been received. The Subcontractor shall make all claims in writing to AMC for additional cost, extensions of time, or delays, within THREE (3) CALENDAR DAYS after the occurrence of the event giving rise to the claim or in sufficient time to allow AMC to process the Subcontractor's claim with the Owner pursuant to the terms of the Prime Contract, whichever is shorter. Written notice of such claims is a condition precedent to the Subcontractor's recovery.

20. **AMC'S REMEDIES:** Should the Subcontractor fail to provide a sufficient labor force or materials of the proper quality and quantity, or fail in any material respect to prosecute the Work as directed by AMC, AMC shall have the right after 72 hour written notice to the Subcontractor, delivered by facsimile, hand, or U.S. Mail to the last know business address, to either perform the work itself and charge the costs to the Subcontractor, including AMC's overhead and profit, or to terminate the employment of the Subcontractor for all or any portion of the work and complete the work by whatever means AMC deems expedient. All re-procurement costs, including reasonable legal fees, shall be charged to the Subcontractor's account. Subcontractor shall remain fully responsible for all warranties and guarantees required by this Agreement of the Prime Contract Documents

21. **TERMINATION FOR CONVENIENCE:**

   a) This Subcontractor may also be terminated for convenience by AMC, in whole or in part:
      i. Whenever for any reason AMC shall determine that such termination is in the best interest of AMC
      ii. Should the Prime Contract be terminated

   b) If the Subcontract is terminated for convenience, the Subcontractor shall only be entitled to receive as payment the difference between an amount equal to the proportion of the Subcontract Amount representing the percent of the Work completed by the Subcontractor and accepted, and the total of all amounts previously paid to the Subcontractor, and the Subcontractor shall not be entitled to receive payment for incidental or consequential damages, or for lost profits on unperformed work.

   c) If the Subcontractor is terminated because the Prime Contract has been terminated, the rights of the Subcontractor with regard to payment and damages shall equal the proportionate share of any payment or damages recovered by AMC pursuant to the terms of the Prime Contract that AMC reasonably determines are properly apportionable to the Subcontractor

22. **COMPLIANCE WITH LAW:** The Subcontractor shall give all notices and comply with all laws, ordinances, rules or regulations and lawful orders of any public authority bearing on the performance of the Subcontract Work.

23. **CLEAN UP:** The Subcontractor shall clean the premises daily. If the Subcontractor fails to perform daily clean up, AMC shall complete the clean up, subject to (24) hours notice, and deduct the cost from sums due the Subcontractor.

24. **LABOR & SUPERVISION:** The Subcontractor shall maintain on-site at all times during performance of the Work a qualified person responsible for the Work and who is authorized to act on its behalf. All labor employed on the Work by the Subcontractor, including supervisory personnel, shall be satisfactory to AMC.

25. **HEADINGS:** Headings used throughout this Subcontract are for the convenience of the parties, and are not intended to restrict or in any way affect the interpretation of this Subcontract.

26. **SEVERABILITY:** The invalidity of any provision of this Subcontract as determined by a court of competent jurisdiction, shall in no way affect the validity of any other provision hereof.

27. **NOTICE:** All notices hereunder shall be given in writing by hand, by commercial courier, or by registered or certified mail, return receipt requested, postage prepaid and shall be deemed given as of the date of hand-delivery or the date of postal or commercial courier receipt witnessing the dispatch of such notice. All notices shall be delivered or sent to the respective parties at the respective addresses set forth above or to such different addresses as the respective parties may from time to time designate by notice properly given hereunder.

28. **ASSIGNMENT:** Subcontractor may not assign, pledge or otherwise transfer any payments, rights or interests in or to the Subcontract or the Subcontract Work without having first obtained the written consent of AMC, which consent may be withheld at the sole discretion of AMC.

29. **NO WAIVERS:** The failure by AMC to insist upon the strict performance of any term, covenant or condition herein contained shall not be deemed to be a waiver of such term, covenant or condition or any subsequent breach of the same or any other term, covenant or condition herein contained. No covenant, term or condition of this Subcontract shall be deemed to have been waived by AMC, unless such waiver shall be in writing and signed by AMC.

30. **ENTIRE AGREEMENT:** This Subcontract and any documents incorporated or referenced herein contain and embrace the entire agreement between the parties hereto, and neither it nor any part of it may be changed, altered, modified, limited or extended, orally or by any agreement between the parties, unless such agreement is expressed in writing, signed and acknowledged by AMC and the Subcontractor, or their successors and assigns.

31. **ADMINISTRATIVE REQUIREMENTS:** The Subcontractor agrees to promptly comply with all administrative items required by the contract documents including, but not limited to: Certified Payroll Reports, Submittals, SF1413 Statement & Acknowledgment Form, Certificate of Insurance, Schedule of Values, List of Key Personnel,



and Certificate of Release.

32.    **EXHIBITS:** The following Exhibits have been attached hereto and are made a part hereof this agreement:

        Exhibit A)   Representations, Certifications And Other Statements, 2 pgs

        Exhibit B)   Health and Safety Requirements, 1pg

        Exhibit C)   Labor Standards, Wage Rates, And Certified Payroll Procedures, 2 pgs

        Exhibit D)   Subcontractor Partial Lien Waiver, 1 pg

        Exhibit E)   Final Lien Waiver, 1 pg

        Exhibit F)   Schedule of Values, 2 pgs

        Exhibit G)   General Wage Decision

        Exhibit H)   IRS Form W-9, 4 pg

        Exhibit J)   SF1413 Statement & Acknowledgment Form, 1pg

        Exhibit K)   Form I 185

WHEREFORE, the parties hereto have placed their hands and seals.

BY THE CONTRACTOR:

ATLANTIC MARINE CONSTRUCTION CO., INC.

Signature: _____

Print _____

Title: _____

Date: _____

BY THE SUBCONTRACTOR

JCREW MANAGEMENT, INC.

Signature: _____

Print _Greg Gould_

Title: _president_

Date: _7/29/10_

# Job Schedule

Contract number: W912DY-08-D-0029-001  Job Superintendent:  Pick  Customer name:  COE

Production date (Elapsed time by week)

| Event | J | F | F | F | F | M | M | M | M | M | | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 |
| EFIS | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Masonry | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Drywall | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Paint | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| HVAC ( Rough-in) | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Sprinkler | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Electrical/Trim | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Fire Alarm | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Down spouts / Soffit | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Paving | | | | | | | Pending Submittal and seepage | | | | | | | | | | | | | | | | | | | | | | | |
| Final Grade | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Sidewalks | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Site Lighting | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Paint and Striping | See Paving | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| & Signage | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Cabinets / Trim | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Flooring | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Landscaping | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Plumbing / Final | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| HVAC Final | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Lay in Ceiling | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Kitchen | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Store Fronts / Doors | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Ceramic Tile | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Set Plumb. Fixtures | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

# EXHIBIT C

The Hanover Insurance Company
440 Lincoln Street
Worcester, MA 01653

RE:    Project:      Fort Hood CDC, Fort Hood, Texas
           Principal:   Atlantic Marine Construction Company Co., Inc.
           Claimant:   J-Crew Management, Inc.
           Contract No. W912DY-08-D-0029-0001
           Bond No. 1882930

Gentleperson:

The undersigned has a direct contract with your Principal, Atlantic Marine Construction Co, Inc. on the above-referenced project. The undersigned performed labor or furnished or supplied materials on the above-referenced project to Atlantic Marine Construction Co., Inc. consisting generally the Scope of Subcontract Work identified in the attached Subcontract Agreement at Section 3.0.

The amount of $88,540.61 is due and owing from Atlantic Marine Construction Company, Inc. for the material furnished or supplied or the labor done or performed, and the amount of $101,512.88 is contractual retainage owed to the undersigned upon completion. The undersigned makes a claim for said amount under the provisions of the Miller Act (40 U.S.C. 270a-270e).

Sincerely,

Greg Gould
J-Crew Management, Inc.

cc:    VIA CERTIFIED MAIL
      RETURN RECEIPT REQUESTED
      Atlantic Marine Construction Co., Inc.
      3465 Chandler Creek Road
      Virginia Beach, VA 23454

# AFFIDAVIT OF CLAIM

State of ___TEXAS___

County of ___BELL___

I, ___GREG GOULD___ , the ___PRESIDENT___ of ___J-CREW MANAGEMENT, INC.___ ,

located at ___410 SOUTH 38TH STREET, KILLEEN, TX 76543___ , on behalf of said firm, hereby state under oath that:

1) Claimant furnished, sold and delivered ___CONSTRUCTION LABOR, EQUIPMENT, MATERIALS, AND SUPPLIES___ to ___ATLANTIC MARINE CONSTRUCTION COMPANY___ between the dates of ___JULY 20, 2010___ and ___NOV. 3, 2011___ for the construction of ___Child Development Center #1___ in accordance with a Subcontract, Purchase Order or Rental Agreement (hereinafter Contract) dated ___July 20, 2010___ , a complete copy of which is attached hereto.

2) Claimant last furnished labor and/or materials on ___November 3, 2011___ .

3) The agreed price of the contract including approved change orders, was $ ___1,015,128.82___ of which $ ___1,015,128.82___ has been earned. The amount paid to date is $ ___825,075.33___ , leaving an amount due of $ ___190,053.49___ .

4) Copies of ///supporting documentation for the Claim including, but not limited to progress estimates, invoices and signed delivery tickets, as applicable, along with a statement of account supporting the Claims is attached or has been provided.

5) Claimant has delivered notice(s) of said Claim by Registered/Certified Mail, if applicable, to Surety, Contractor, Owner.

6) Copies of /////////notices and proof of their receipt are attached hereto or have been previously provided.

7) Claimant certifies that there are no just credits, offsets, assignments, liens or encumbrances against the Claim and that Claimant has fully paid all firms or persons supplying labor, material or equipment to or for the project except ___See Exhibit A___ .

8) ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉                                   NOT APPLICABLE

9) Claimant certifies that it has fully performed its duties under the Contract, including the delivery of all required closeout documents, warranties, as-built drawings and O&M manuals, with the exception of: ___NONE___ .

10) Claimant confirms that all guarantees and warranties required under the terms of the aforesaid Contract pertaining to the work, labor and/or materials furnished by the undersigned shall remain in full force and effect in accordance with their terms which, however, shall not be extended nor enlarged hereby. provided that payment is made or any such guarantees or warranties are void and unenforceable due to the material breach by Atlantic Marine Construction.



*00-00031812005079*

Affiant has full knowledge of the statements contained herein and the basis therefore and has been duly authorized by Claimant to make said statements. Affiant acknowledges that Surety is relying on the representations made herein, in part, to review the claim.

The following information is furnished to the Surety in support of affiant's claim, and it is understood that in furnishing this form the acceptance and/or retention by the Surety does not constitute a waiver of any of the terms and conditions of the surety's bond nor of any rights or defenses the Surety has or may have, and is not and shall not be deemed to be an admission of liability.

J-CREW MANAGEMENT, INC.
Name of Claimant

By: _____
Name of Affiant

Title: PRESIDENT

## THIS AFFIDAVIT MUST BE EXECUTED BEFORE A NOTARY PUBLIC

State of ___TEXAS___

County of ___BELL___

On this ___1___ day of ___DECEMBER___, 20 ___11___, before me, the undersigned notary public, personally appeared ___GREG GOULD___ (name of document signer), proved to me through satisfactory evidence of identification which was ___KNOWN TO ME OR DRIVER'S LICENSE___, to be the person who signed the preceding or attached document in my presence, and who swore or affirmed to me that the contents of the document are truthful and accurate to the best of (his)(her) knowledge and belief.

Witness my hand and seal.

_____
(Signature of Notary)

My commission expires: _____

TISHA HEFLIN
NOTARY PUBLIC
STATE OF TEXAS
MY COMM. EXP. 5-20-2015



# Exhibit A

**Principal:**     **Atlantic Marine Construction Co., Inc**

**Claim No:**     **00-00031812 005**

**Bond No:**     **BCR 1882930**

**Claimant:**     **J-Crew Management Inc**

| | |
|---|---|
| *Norman Woodworks* | *$ 25,846.12* |
| *Stein Service* | *$ 25,517.50* |
| *Newman Sports Flooring* | *$ 16,000* |
| *Ponder* | *$ 13,658* |

**J-Crew Management, Inc.**

*A Service-Disable, Veteran-Owned, Corp.*

PO Box 11206, Killeen, Tx 76547

254-526-2423        254-526-5748 FAX